# In re Moore

*Howard Ulan, Assistant Attorney General,* for petitioner.

*Edwin R. Frownfelter,* for respondent.

EPPINGER, *P.J.,* August 24, 1979—On May 4, 1979, after a hearing, Florence Moore was adjudicated an incompetent and the court appointed a guardian for her to provide substitute consent for medical and surgical care necessary to protect her life. She has been a resident at the South Mountain Restoration Center since 1969. We appointed a temporary guardian for Mrs. Moore and after our decree an appeal was filed. This opinion is submitted in support of our adjudication of incompetency.

The petition was brought under the Act of June 30, 1972, P.L. 508, 20 Pa.C.S.A. §5513, which gives authority to a court to appoint a temporary guardian for a person where it appears that the failure to make such appointment will result in irreparable harm to the person of the alleged incompetent. Mrs. Moore appeared at the hearing after a citation was served upon her and testified on her own behalf.

The evidence introduced by petitioner, Howard Ulan, Assistant Attorney General, was that of Dr. Joseph O. Strite, psychiatrist and medical director of the Cumberland Valley Mental Health Clinic, and Dr. Harold Closson, Staff Physician at the Restoration Center, the latter by an affidavit.

Dr. Clossen's affidavit describes the situation which occasioned the petition and hearing as a "chronic and progressive problem with a stasis ulceration of the left leg," a condition existing since 1970. Since the inception of the problem, Mrs. Moore has refused appropriate medical treatment and, according to Dr. Clossen, has insisted on using "patently inappropriate and unsanitary" self-treatment measures. The disease has developed to a point where the muscles and tendons of her leg are exposed and there is constant drainage from the area. With the destruction of the leg tissue continuing, a further delay in appropriate medical treatment is likely to result in a life threatening situation. The onset of gangrene is imminent, with a resultant loss of the leg or death. There is a reasonable chance that tissue destruction can be halted with appropriate treatment and that infection and gangrene can be prevented.

Mrs. Moore is a paranoid schizophrenic and does not have the mental capacity to make decisions concerning her health. This was the credible testimony of Dr. Strite. She denies having the ulcer and evades questions about its existence at this time, though there may have been a time when she was aware of her problem. To assert that she might have been aware of her problem at one time is, however, according to Dr. Strite, to give her the benefit of the doubt because it would be hard for anyone to look at the unbandaged ulcer and deny

that there was a hole in the leg. Mrs. Moore's judgment is impaired by her delusional and paranoid ideas.

It is Mrs. Moore's view that treating her leg with water is all that is needed. She first denied any conversation with Dr. Closson and others about her leg and then said, "they think there is danger, however, I say there isn't." She stated she had a blood clot that she believed in treating with mustard packs and believed in anointing her leg.

Mrs. Moore said she doesn't believe in hospitals but only in house physicians, an apparent reference to a time when doctors made house calls. When asked to choose between an operation and death she stated she didn't fear death but didn't believe her time had come. She later stated: "I intend to die. Not now, not yet, but I have been told for a while that I am good for a hundred." On the basis of the medical testimony, the condition of her leg may cause death long before her intended time.

We did not find a Pennsylvania case precisely on point. We found a somewhat similar situation in In re Maida Yetter, 62 D. & C. 2d 619 (1973). A doctor wanted to perform a surgical biopsy and corrective surgery that the pathology on the biopsy indicated was required. Mrs. Yetter was a 60-year-old patient of a State Hospital and refused treatment so a petition was presented to appoint a guardian to give consent to the surgery. The court found that Mrs. Yetter had refused the treatment at a time when she was informed and conscious of the consequences. Her determination not to have the surgery continued to the time of the petition, which was occasioned by the fact that then a doubt existed as to her competency to consent because her continued refusal was accompanied by delusions

which began about three or four months after surgery was first suggested. The rule of the Yetter case seems to be that if the person was competent while being presented with the decision and in making the decision, the court should not interefere even though the decision might appear unwise, foolish or ridiculous and even though the person may have later become delusional.

Mrs. Moore, however, was incompetent when the treatment question was presented to her and she refused it. One's mental capacity is best determined by her spoken words, her acts and conduct: Denner v. Beyer, 352 Pa. 386, 42 A. 2d 747 (1945); Owens Appeal, 167 Pa. Superior Ct. 10, 74 A. 2d 705 (1950). While there was psychiatric testimony concerning Mrs. Moore's incompetency, her statements to the court revealed that she could not make a rational decision for the treatment of her leg. She responded to questions with confusing, irrelevant ramblings and she repeatedly denied the existence of the ulcer. A similar denial of the gangrenous condition of her feet by a 72-year-old woman confronted the Tennessee Court of Appeals in State Dept. of Human Services v. Northern, 563 S.W. 2d 197, 210 (1978). There the court said:

"In order to avoid the unpleasant experience of facing death and/or loss of feet, her mind or emotions have resorted to the device of denying the unpleasant reality so that, to the patient, the unpleasant reality does not exist. This is the 'delusion' which renders the patient incapable of making a rational decision as to whether to undergo surgery to save her life or to forego surgery and forfeit her life." The court found that the woman lacked the capacity to consent to protective medical services.

If Mrs. Moore is a competent adult, she has the absolute right to refuse or accept medical recommendations which may prolong her life or which appear to others to be in her best interest. But she is not a competent adult. Therefore the petition for the appointment of a temporary guardian of the person of Florence Moore was granted.